This case is before this court on appeal from a judgment of the Sandusky County Court of Common Pleas, which found defendant-appellant, Earl L. Jackson, guilty of having a weapon while under a disability, in violation of R.C.2923.13(A)(3). From the judgment, appellant raises the following assignment of error:
 "THE COURT'S ADMISSION INTO EVIDENCE OF STANLEY GRAHAM'S POLYGRAPH EXAMINATION
 WITHOUT REQUIRING THAT THE SAFEGUARDS OF THE SOUEL
CRITERIA BE SATISFIED WAS REVERSIBLE ERROR RESULTING IN DEFENDANT-APPELLANT'S CONVICTION."
This case involves the November 16, 1996 homicide of Anthony Hoffman, which resulted from the victim's ill-fated attempt to purchase crack cocaine on Tiffin Street in Fremont, Ohio. On February 27, 1998, appellant was indicted on one count of having a weapon while under a disability, R.C. 2923.13(A)(3), a fifth degree felony, and on one count of felonious assault, in violation of R.C. 2903.11(B), a second degree felony. Appellant entered a not guilty plea as to both counts.
Appellant's case was set to be tried jointly with co-defendants Powell Greene, the alleged murderer, and Stanley Graham; however, prior to trial, Graham entered into a plea agreement with the state. The plea agreement provides:
 "Stanley L. Graham and the Sandusky County Prosecuting Attorney agree as follows:
 "1. Graham will plead guilty to count one of case number 98-CR-139, a fifth degree felony, and be sentenced to 90 days in jail, with the SCPA joining in a motion for early release after the trial of Powell Greene.
 "2. All other charges currently pending against Graham will be dismissed, and no charges will be filed based on any knowledge currently in the possession of the SCPA or the Fremont Police, and specifically no charge of complicity to murder in the death of Tony Hoffman will be filed.
 "3. Before the above becomes affective [sic] however,, [sic] Graham will provide all information he has concerning the death of Tony Hoffman and the events immediately before and after, and will pass a polygraph, if requested, concerning his information.
 "4. Further, Graham, if requested, will testify at the trial of Powell Greene and/or Earl Jackson truthfully and consistently with the information previously provided.
 "5. If Graham does not pass the polygraph test (result of deception) then this agreement is void and of no effect."
On May 4, 1998, the case against appellant and Powell Greene proceeded to trial. Out of the hearing of the jury, appellant made an oral motion in limine seeking to prevent Graham, during his testimony, from mentioning the polygraph examination taken as part of the plea agreement. Greene joined in the motion.
The defense parties argued that the results of polygraph examinations are inadmissible except by stipulation. The court denied the motion, stating that the law is unclear as to whether the inadmissibility of polygraphs applies only to defendants, not witnesses. The court further stated that "if you're going to talk about the plea agreement you're going to talk about the whole plea agreement or not at all, because fair is fair."
During direct examination of Graham, Graham testified that appellant had an automatic weapon, on his person, on November 16, 1996. The state made no reference to the plea agreement. Likewise, on cross-examination, appellant's trial counsel did not question Graham regarding the plea agreement. Greene's trial counsel questioned Graham as follows:
 "Q: Now part of your plea agreement is that you were to take a polygraph test, is that correct?
"A: Right.
"Q: Did you take it?
"A: Yes.
"Q: Did you get your deal?
"A: Yes."
Thereafter, the following took place, without objection, during the state's redirect examination:
 "Q: Showing you what has been marked as State's Exhibit No. 39, can you tell me what that is?
"A: The agreement I —
 "Q: That's the agreement you had with the Prosecutor's Office?
"A: Right.
"Q: Do you see your signature on there?
"A: Yes, right in the middle.
"Q: Okay. And you see John Myers' signature?
"A: Yes.
"Q: And do you see your attorney's signature?
"A: Right.
 "Q: And this is the agreement that you signed that you've been testifying to today?
"A: Yes."
No further testimony was given regarding the terms of the plea agreement or the results of the polygraph examination. At the close of the evidence, the plea agreement was admitted without objection.
Furnell Osbin, who was with appellant and Greene when Anthony Hoffman was murdered, also testified at trial. Osbin, similarly testified that appellant had a gun on his person on the night of the murder. He further testified that appellant fired his weapon at the automobile in which Anthony Hoffman had arrived as a passenger. It was stopped at the end of the street, with the driver waiting inside for Hoffman to return. Both appellant's and Greene's attorneys, during cross-examination, thoroughly questioned Osbin regarding the plea bargain he received and his extensive criminal record.
The jury found appellant not guilty of felonious assault and guilty of having a weapon while under a disability. The court sentenced appellant to eleven months in prison.
In his sole assignment of error, appellant contends that the trial court committed reversible error in allowing evidence of the plea agreement, which contained the requirement that Graham pass a polygraph test. Appellee responds that appellant failed to object to Graham's testimony regarding the plea agreement and to the submission of the plea agreement into evidence and, therefore, waived his claim of error on appeal.
A motion in limine is a "tentative interlocutory, precautionary ruling by a trial court reflecting its anticipatory treatment of [an] evidentiary issue." Cunningham v. Goodyear Tire Rubber Co. (1995), 104 Ohio App.3d 385, 393, citing State v.Grubb (1986), 28 Ohio St.3d 199, 201-202. The nature of the ruling is interlocutory and not final until raised in the context of a trial. Failure to object to the evidence at trial constitutes a waiver and could not provide a basis for reversal absent plain error. State v. Maurer (1984), 15 Ohio St.3d 239,259-260. Plain error, pursuant to Crim. R. 52(B), exists where "but for the error, the outcome of the trial clearly would have been otherwise." State v. Long (1978), 53 Ohio St.2d 91, paragraph two of the syllabus.
Addressing the admission of polygraph examinations, inState v. Souel (1978), 53 Ohio St.2d 123, the Ohio Supreme Court set forth the criteria which must be followed prior to the admission of a polygraph examination for purposes of impeachment or corroboration. Souel requires, inter alia, that prior to the defendant's submission to the polygraph, the parties enter into a written stipulation. Id. at syllabus. Such criteria was established to protect criminal defendants from the inherent unreliability of polygraph examinations. Criss v. SpringfieldTwp. (1990), 56 Ohio St.3d 82, 85. Whether it is a defendant's own polygraph or a witness's, a criminal defendant is exposed to the same threat of prejudice. See State v. Rowe (1990), 68 Ohio App.3d 595,610, citing State v. Lascola (1988), 61 Ohio App.3d 228,236-237.
Addressing the merits of appellant's appeal, however, we find that the admission of the plea agreement and testimony referring to the polygraph examination does not rise to the level of plain error. The record is devoid of evidence that testimony regarding the actual results of the polygraph was given. No graphs or charts were admitted and no expert testimony was given regarding polygraph testing procedures and interpretation of results.
It was Greene's trial counsel and not the state who first elicited testimony regarding the polygraph examination. Further, the state and Greene's trial counsel referred only to the fact that the polygraph was part of the plea agreement. Appellant's trial counsel failed to object to the admission of the actual plea agreement and failed to request a curative jury instruction. See State v. Spirko (1991), 59 Ohio St.3d 1, 8.
Appellant contends that reference to the polygraph examination may have prejudicially bolstered Graham's credibility. However, upon review of his entire testimony, we find that any adverse impact was diminished by testimony regarding the reduced sentence that Graham received by testifying against appellant and Greene, and by evidence of Graham's prior criminal convictions. In other words, Graham's motive for lying was fully demonstrated. Graham's testimony that appellant had a gun on his person was also corroborated by the testimony of Furnell Osbin. Thus, appellant had failed to demonstrate that absent the references to the polygraph examination, the result of the trial would have been different. Accordingly, appellant's sole assignment of error is not well-taken.
On consideration whereof, the court finds that appellant was not prejudiced or prevented from having a fair trial and the judgment of the Sandusky County Court of Common Pleas is affirmed. Costs to appellant.
JUDGMENT AFFIRMED.